On the 14th of October, 1854, Samuel D. Schoolfield conveyed by deed to the plaintiff, Harrison Smith, of the firm of W. W. H. Smith of Philadelphia, in the State of Pennsylvania, a negro woman by the name of Charlotte, aged about 27 years, with general warranty, for the consideration of $800. The deed was proved on the 30th of December in that year, put in the Register's hands on the 1st of January, 1855, and registered on the 9th of the same month. At the time of the execution of this deed, or bill of sale, Samuel D. Schoolfield had no slave by the name of Charlotte, and had but one woman whose name was Jane. She had been purchased of Mrs. Hooker by said Schoolfield. Previously to the execution of this deed, Schoolfield had executed another deed for a woman "Charlotte" to the same party; but some difficulty arising about its registration, it was agreed that that should be destroyed and a new one substituted in its place, which was done, the attorney who drew the latter deed neither seeking nor obtaining any information as to the name or identity of the slave, other than was derivable from the former deed. The slave conveyed was not present, and was entirely unknown to the plaintiff or his agent who conducted the business; nor was she delivered to the plaintiff or his agent when this bill of sale was made; but as soon as the contract was executed, the vendor Schoolfield agreed to hire the woman at five dollars per month, and for that reason retained her in his possession without her being at all produced to (254) the plaintiff's agent. The plaintiff was an entire stranger in the country, and had never seen any slave belonging to Schoolfield, nor did his agent have any knowledge of the name or personal identity of any slave in his (Schoolfield's) possession. There was no money paid when this deed was executed. Schoolfield was indebted to the plaintiff and his co-partners in the sum of $2600, or thereabouts. When the *Page 212 
first conveyance was made, he was credited by the plaintiff with eight hundred dollars on that debt, and when the second conveyance was made, on 14th of October, the credit as before entered, was simply permitted to stand.
It is alleged in the plaintiff's bill, that the true name of the only woman in the possession of Schoolfield was Jane, and that she was intended to be conveyed; that either from false information given by Schoolfield, intended to cheat and delude plaintiff's agent, or from a mistake in the agent who also acted as draftsman, and prepared the instrument, the name of Charlotte was inserted instead of Jane. Plaintiff further alleges, that being so in possession of the slave Jane, by virtue of the contract of hiring on the 8th of January, 1855, he conveyed her, with a considerable amount of other property, to the defendant John A. Turrentine, for the nominal sum of $5, in trust to secure certain debts therein named, and save harmless and indemnify, James C. Turrentine, John J. Freeland, Andrew C. Murdock, Edmund Strudwick and others, who were bound for him as sureties, and that the trustees and cestuis que trust above named, all, had notice of the fraud or mistake when the above conveyance was taken. The bill prays for an injunction to prevent the defendants from selling the slave Jane; for a re-conveyance of her to plaintiff; for an account of her hire, and for general relief.
The defendants (the trustee and cestuis que trust) in their answer, deny that they had knowledge of the plaintiff's conveyance of any slave whatever; they insist that even if the registration could have affected them with notice under any circumstances, such could (255) not be the effect in this instance, as the plaintiff's deed was not spread upon the register's book until the day after their deed was made; they deny that they had any knowledge of any fraud practiced on plaintiff by Schoolfield, or of any mistake on his part in taking a deed for the slave Charlotte instead of Jane, and they submit whether, if such had been the fact, they could, by parol evidence, have an alteration of the contract, so as to convey one slave instead of another; and they also submit whether the gross negligence of the plaintiff in purchasing and taking a conveyance of a slave which was not present, and which he never saw, and about which, or its value he made no enquiries, does not effectually preclude him from any relief, whatever his equity may be in other respects. They aver that their own conveyance was fair and bona fide, for the purpose of securingbona fide debts, and to indemnify against actual liabilities incurred by them for Schoolfield. *Page 213 
There were replication and proofs taken, and the cause being set down for hearing, was removed to this Court by consent.
We deem it unnecessary to consider some of the interesting questions which were ably discussed at the bar. There is a plain ground of equity, upon which, without adverting to any other, the plaintiff's bill must be dismissed. At the time when the slave Jane was conveyed to the defendant Turrentine, in trust for the other defendants who were creditors, it is certain that there was no bill of sale, or other instrument, by which she was conveyed to the plaintiff. Supposing then, that by mistake, or by the fraud of Schoolfield, the debtor, the name of Charlotte was inserted in the bill of sale to the plaintiff, the defendants cannot be affected by it. It is not pretended that they were parties to any fraud, and it does not appear that they had any notice of either fraud or mistake. The plaintiff himself was but a creditor, seeking to save his debt by purchasing the slave, and therefore has no higher claim to the interference of the (256) Court of Equity than the other creditors. The latter fairly and honestly obtained the legal estate, and have a right to retain it. "Equity never interferes to aid one creditor against another on the ground of mistake." Knight v. Bunn, 42 N.C. 77. And even if the debtor intended to defraud the plaintiff, equity will not relieve him at the expense of the defendants who are as innocent and meritorious as he.
Per curiam.
The bill must be dismissed with costs.
Cited: Huffman v. Fry, 58 N.C. 416.